UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| James Prisk, | Case No. 21-cv-1723 (WMW/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| Travelers Indemnity Company of America, | |
| Defendant. | |

---

Before the Court is Defendant Travelers Indemnity Company of America's (Travelers) motion to alter or amend the judgment pursuant to Rule 59(e), Fed. R. Civ. P. (Dkt. 31.) For the reasons addressed below, the Court denies Travelers's motion.

## BACKGROUND

In May 2020, a vehicle owned by the City of Hermantown (Hermantown) struck Plaintiff James Prisk. At the time of the accident, Travelers insured Hermantown. The insurance policy between Travelers and Hermantown (the Policy) provides, in relevant part, that "[t]he most [Travelers] will pay for any one accident or loss" resulting from "covered autos liability" is $2,000,000. The Policy also contains a "Statutory Cap Limits of Insurance Endorsement – Minnesota," which provides:

> the Minnesota Each Claimant Limit – Statutory Cap is the most that [Travelers] will pay for the combined total of:
>
> > a. All damages because of "bodily injury" and "property damage":

> (1) Resulting from any one "accident" and sustained by any one person or organization that is determined to be a claimant under . . . Minnesota Statute[s] Section 466.04 or any amendments to those sections; and
>
> (2) That are subject to Minnesota's statutory caps on damages for governmental tort liability in . . . Minnesota Statute[s] Section 466.04[.]

The Policy provides that the Minnesota Each Claimant Limit – Statutory Cap is $500,000.

In June 2021, Prisk commenced this action against Travelers, seeking a declaratory judgment that the liability limit in the Policy for his claim is $2,000,000. Prisk moved for summary judgment after the parties stipulated that there were no facts in dispute and that the sole issue before the Court was the applicable limit of coverage under the Policy. On July 18, 2022, the Court granted Prisk's motion for summary judgment. On August 16, 2022, Travelers filed the pending motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), contending that the Court's July 18, 2022 Order contains a manifest error of law.

## ANALYSIS

A party may file a "motion to alter or amend a judgment" within 28 days after the entry of judgment. Fed. R. Civ. P. 59(e). A motion to alter or amend a judgment is for the limited purpose of correcting manifest errors of law or fact or presenting newly discovered evidence. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998). "[A] manifest error of law is created by a disregard, misapplication, or failure to recognize controlling precedent, not by the

2

disappointment of the losing party." *Traylor v. I.C. Sys., Inc.*, No. 11-2968 (DWF/SER), 2013 WL 509872, at *1 (D. Minn. Feb. 12, 2013). Rule 59(e) is not a means "to introduce new evidence, tender new legal theories, or raise arguments [that] could have been offered or raised prior to entry of judgment." *Id.* A district court has broad discretion when determining whether to grant a motion to alter or amend. *Innovative Home Health Care*, 141 F.3d 1286. But "reconsideration of a judgment after its entry is an extraordinary remedy [that] should be used sparingly." 11 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 2810.1 (3d ed. Apr. 2022 Update). According to Travelers, the Court committed a manifest error of law by concluding that the statutory tort cap endorsement in the Policy contravenes Minnesota law.

Municipal tort liability is statutorily capped at $500,000 in Minnesota. Minn. Stat. § 466.04, subdiv. 1(a)(3). But if a municipality procures insurance coverage that exceeds the statutory municipal tort cap, the procurement of such excess coverage waives the municipal tort cap "to the extent that valid and collectible insurance . . . exceeds those limits and covers the claim." Minn. Stat. § 466.06. When "a municipality expends public funds for the purchase of liability insurance, such expenditure constitutes a waiver [of the municipal tort caps] by the municipality and its insurer to the extent of the policy coverage." *Schoening v. U.S. Aviation Underwriters, Inc.*, 120 N.W.2d 859, 865 (Minn. 1963). The waiver provision in Section 466.06 applies to the liability limits in Section 466.04. *Casper v. City of Stacy*, 473 N.W.2d 902, 904–05 (Minn. Ct. App. 1991). In some instances, municipalities have attempted to include non-waiver provisions in their

3

insurance policies. Although no appellate court has addressed the legality of such provisions, a court in this District found that they are unenforceable. *See Frazier v. Bickford*, No. 14-cv-3843 (SRN/JJK), 2015 WL 6082734, at *4 (D. Minn. Oct. 15, 2015) ("[W]hen a municipality procures insurance coverage exceeding the statutory liability caps set by Minn. Stat. § 466.04, it waives those caps pursuant to Minn. Stat. § 466.06, even if the insurer attempts to avoid waiver by including a non-waiver provision in its policy.").

Travelers argues that the Court assumed without proof that Hermantown expended public funds for the purchase of liability insurance in excess of the municipal tort cap when it procured insurance that provided for $2,000,000 in "covered autos liability" and $500,000 for claims subject to the statutory tort cap. In its July 18, 2022 Order, the Court considered the plain language of the Policy, which provides that "[t]he most we will pay for any one accident or loss" resulting from "covered autos liability" is $2,000,000. The Policy also contains a "Statutory Cap Limits of Insurance Endorsement – Minnesota," which provides that claims that are subject to the statutory tort cap in Section 466.04 are limited to $500,000 in coverage. The parties do not dispute that the Minnesota Each Claimant Limit – Statutory Cap limit of $500,000 is the limit at issue in this case. And the parties do not dispute that the driver who struck Prisk was operating a "covered auto[]" at the time of the accident. Because the Policy states that the coverage limit for "covered autos" is $2,000,000, the Court did not assume that Hermantown expended public funds

4

for the purchase of liability insurance in excess of the municipal tort cap.[1] Instead, the Court's analysis considered whether, as a threshold matter, the statutory tort cap endorsement is a permissible means of limiting liability in light of Section 466.06.

In its July 18, 2022 Order, the Court considered, and rejected, Travelers's argument that there is no valid and collectible insurance above $500,000 available to cover Prisk's claim because of the Policy's statutory tort cap endorsement. The Court concluded that the issue in this case is analogous to the issue decided in *Frazier*. The insurance policy at issue in *Frazier* contained a $5,000,000 limit on coverage, as well as a provision that stated that "[n]othing contained in this policy shall be deemed a waiver of any statutory immunity or limitation of liability available to any insured." 2015 WL 6082734, at *1 (emphasis omitted). The court in *Frazier* concluded that "when a municipality procures insurance coverage exceeding the statutory liability caps set by Minn. Stat. § 466.04, it waives those caps pursuant to Minn. Stat. § 466.06, even if the insurer attempts to avoid waiver by including a non-waiver provision in its policy." *Id.* at *4. As in this case, the defendants in *Frazier* argued that because "the Non-Waiver Provision limits the . . . Policy's coverage amount to the $500,000 cap set by [Minn. Stat.] § 466.04," no valid and collectible insurance above the $500,000 municipal tort cap existed. *Id.* at *12. But the court in *Frazier* concluded that, because both parties

---

[1]     As Prisk observes, the premiums paid for the coverage in the Policy are not before the Court. The Court based its analysis in the July 18, 2022 Order solely on the liability limits provided in the Policy.

acknowledged that the insurance policy would have covered the claim without the non-waiver provision, valid and collectible insurance that covered Frazier's claim existed. *Id.*

This case is analogous to *Frazier*. The Policy contains a $2,000,000 liability limit applicable to "covered autos." The parties do not dispute that the driver who struck Prisk operated a "covered auto[]." The Policy also contains a statutory tort cap endorsement that purports to lower the liability limit for claims subject to the municipal tort liability cap to the $500,000 municipal tort cap. If enforced, the effects of the statutory tort cap endorsement and the non-waiver provision are identical: to limit otherwise available coverage to the extent of the municipal tort cap while preserving higher liability limits for claims not subject to the municipal tort cap. Such a result "would allow Defendants to contract around the provisions of [Section] 466.06 . . . and disrupt the legislative policies behind Minnesota's statutory liability limits." *Id.* at *9 (citing *Heim v. Am. Alliance Ins. Co. of N.Y.*, 180 N.W. 225, 226 (Minn. 1920); *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)).

Travelers contends that the Court misconstrued Section 466.06. Travelers argues that the Court ignored the first two parts of Section 466.06, which provide that a municipality may procure insurance against liability for municipal torts and that a municipality may procure such insurance in excess of the liability limits imposed by the statutory tort cap. Travelers contends that Section 466.06 does not require municipalities to procure insurance coverage for municipal torts and does not prevent a municipality from procuring different limits of insurance coverage for different risks. But here, it is

undisputed that the Policy's limit for "covered autos" liability is $2,000,000. By procuring $2,000,000 in "covered autos" coverage, Hermantown procured coverage in excess of the municipal tort cap and, therefore, waived the statutory tort cap. *See* Minn. Stat. § 466.06. For this reason, the statutory tort cap endorsement, like the non-waiver provision in *Frazier*, is invalid. *See Heim*, 180 N.W. at 226 ("It is a salutary rule of law that when a statute is founded upon public policy, those to whom it applies should not be permitted to waive its provisions.").

Although not binding on this Court, *Frazier* is the most directly analogous case to this action and its reasoning is persuasive. *Frazier* found unenforceable a non-waiver provision that the defendants contended limited the amount of collectible insurance to the extent of the municipal tort cap. Setting a liability limit for claims subject to the municipal tort cap that is at or below the municipal tort cap limit, while preserving a higher level of coverage for identical claims not subject to the municipal tort cap, is an analogous means of contracting around the waiver provision in Section 466.06. *See Frazier*, 2015 WL 6082734, at *9.[2]

Given the dearth of controlling caselaw and this Court's attention to persuasive analogous authority, there is a colorable basis for the Court's conclusion that the statutory tort cap endorsement in the Policy contravenes Minnesota law. Because the Court does

---

[2] The Court's conclusion does not bar a negotiated agreement that limits municipal tort liability to a level above the statutory tort cap. Because such a limit would unequivocally waive the statutory tort cap, it would not circumvent Section 466.06.

not believe it committed a manifest error of law, the Court denies Travelers's motion to amend or alter the judgment.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED** that Defendant Travelers Indemnity Company of America's motion to alter or amend the judgment, (Dkt. 31), is **DENIED**.

Dated: October 13, 2022                                s/Wilhelmina M. Wright
                                                                                 Wilhelmina M. Wright
                                                                                 United States District Judge